## NICOLAS VALENCIA, CERILDO VALENCIA, AND EUSEBIA VALENCIA DE CARTES *v.* AUGUSTIN BERNAL, JUAN BERNAL, BRUNO BERNAL, ANTONIO BERNAL, AND FRANCISCO BERNAL.

ACTION FOR SETTLEMENT OF AN ESTATE, THERE BEING NO ADMINISTRATION.—Where a party died intestate, while the Mexican law was in force, leaving surviving him a widow and children, and grandchildren, sons or daughters of a deceased child, and also personal property, and there was no administration on the estate, and the widow and children and grandchildren managed and disposed of the personal property in common for a long time, in an action brought by one or more for a settlement and division of the property, they should be treated as tenants in common of the property, and all, including the representatives of the widow after her death, are necessary parties.

EXECUTOR *de son tort.*—An heir, who in a subordinate capacity, managed the property of an intestate without administration, under the direction and control of another, while the Mexican law was in force, is not liable in a character analagous to that of an executor *de son tort* at common law.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The complaint charged that José Joaquin Bernal departed this life in 1837, at the Rancho of Santa Teresa, in the present County of Santa Clara, leaving him surviving his heirs at law, his sons Augustin, Juan, and Bruno, the defendants, his daughters Jacoba, Zacharias, Petra, Pilar, Encarnacion, Dolores, and Magdalena, and his grandchildren, the plaintiffs, children of Marcelena, a deceased daughter, and that the grandchildren were entitled to one tenth of the estate.

The complaint further charged that said José Joaquin Bernal died seized of the Rancho Santa Teresa, and also possessed of ten thousand head of cattle, one hundred and fifty head of horses, mares and colts, running and grazing on and around the rancho; and that immediately after his death, the defendants Augustin, Bruno, and Juan, took possession for themselves and the other heirs, of said cattle, horses, and sheep, and have ever since retained the possession and control and management of the same, together with the natural increase of the same and the products of sales of portions thereof, except so far as they have settled and accounted with the heirs not made parties to the suit; and that at the time of the death of José Joaquin Bernal, plaintiffs were infants, and that their distributive share of the estate, to wit: one tenth, had remained in the possession and control of the defendants Augustin, Bruno, and Juan, who had never settled with plaintiffs or accounted to them therefor, and that they had demanded of them an accounting and settlement, which had been refused.

The complaint also charged that defendant Bruno Bernal, with the intent of defrauding plaintiffs, and without any consideration whatever, had conveyed the whole of that portion of the property remaining in his hands to his two sons, the defendants Antonio and Francisco.

The complaint prayed for an accounting and distribution of the property. The action was commenced March 20th, 1860.

The Court found the following facts:

42

1st. That José Joaquin Bernal, now deceased, in his lifetime lived with his family on the Santa Clara Teresa Rancho, in Santa Clara County, and had on it a large number of Spanish cattle. The defendants, Juan Bernal, Augustin Bernal, and Bruno Bernal, three sons of the said José, lived on the same rancho, and each one had his separate house in which he lived with his family, and his separate flocks and herds, and used his separate brand. At the death of the said José, their father, Augustin was about thirty-eight or forty years of age, and owned of his own separate cattle about twelve or fourteen hundred head; Bruno, about thirty-five years old, and owned about the same number of cattle; and Juan was about twenty-five years old, and owned about one thousand head of cattle.

2nd. That the said José Joaquin Bernal died in the year 1837 possessed of five thousand head of cattle on said rancho, leaving surviving him his widow, Josepha; three sons, the defendants, Juan, Augustin, and Bruno; six daughters, Jacoba, Zacharias, Petra, Pilar, Encarnacion, and Dolores; and the grandchildren of two deceased daughters, Magdalena and Marcelena; the plaintiffs herein being the children of the deceased daughter, Marcelena.

3d. That the said José died without having made any last will and testament, but on his deathbed he gave oral direction that the property should be left in charge of his said widow, Josepha, and that his three sons, Juan, Augustin, and Bruno, should receive each two hundred head, and each of his daughters two hundred head, except those of them who had received a donation in his lifetime, and to each of said daughters who had received such donation, one hundred head were to be given, and the remainder were to be left the widow.

4th. That the said widow and the three sons, defendants herein, and the plaintiffs herein, the grandchildren of said deceased José Joaquin, and their father, Julio Valencia, lived on the Santa Teresa Ranch after the death of said José Joaquin, and the said property was principally managed and controlled

by the said widow and the three sons until the time herein-
after stated under her advice and direction, but there was no
administration had of said José Joaquin's estate by the defend-
ants or either of them.

5th. That said cattle were thus taken care of and managed
upon said ranch until the year 1839, when a division was had
by the directions of the said widow through the said defend-
ants, and in pursuance of the wishes of the deceased, José
Joaquin. In that division two hundred head were allowed to
each one of the three sons, and one hundred head to each one
of the daughters living, and one hundred head each to the
representatives of the two deceased daughters, Magdelena and
Marcelena; each one of the sons and daughters also received
his or her allowance, and expressed satisfaction therewith.
Julio Valencia, the father of the plaintiffs, and the plaintiffs
themselves, who were then minors under the age of twenty-one
years, were present at the division, and the said Julio received
for his said children the one hundred head allowed to them as
the children of the deceased daughter, Marcelena.

6th. That in 1839 there were slaughtered, to pay debts, six
hundred head of cattle on the Santa Teresa Rancho, and dur-
ing the years 1840, 1841, 1842, and 1843, there were slaugh-
tered for the same purpose one hundred head per annum, one
half of all which were of the fondo or rancho brand, and
the said defendants each slaughtered fifty head of cattle each
year for the use of their own household, one half of which was
fondo.

7th. That this fondo brand was retained and used by the
widow Josepha on said ranch after the death of the said José
Joaquin.

8th. That in 1840 eight hundred and thirty-four head of
cattle were taken from the Santa Teresa Ranch, by permission
of the widow and the defendants, and were sold for them by
their agent Sunol for nine thousand three hundred dollars, one
of which were in the fondo brand; and that amount was paid
to the widow and the defendants.

9th. That in 1843–4 the defendants Juan and Augustin left

the Santa Teresa Ranch, and defendant Bruno several years thereafter, and went to reside with their families at their respective ranches in Alameda County, and they took with them at time of their removal from the Santa Teresa Ranch three thousand head of cattle, but how many, if any, were in the fondo brand does not appear.

10th. That after the defendants left the Santa Teresa Ranch, the widow and the plaintiffs continued to reside on said ranch, taking care of the cattle remaining there.

11th. That Nicholas Valencia, one of the plaintiffs, resided on said ranch with the said widow from the year 1847, taking charge of the cattle on the ranch, and the rodeo, and branded, and sold and killed, and managed by the advice and directions of the widow.

12th. That the said widow had from seventy to eighty grandchildren, and she occasionally presented them with cattle or money, and she died in 1857.

13th. That in 1853, while the said Nicholas was managing and controlling and taking care of the said cattle on the said ranch for the widow, he had on the ranch eight hundred head of cattle in his own brand.

14th. That in 1853 the said Nicholas drove away from the said ranch four hundred head of cattle, the proceeds of seventy-eight head which were given by the widow and Bruno to the tithe collector in 1851, and bought by Nicholas from the tithe collector.

15th. That the plaintiff, Cerildo Valencia, in 1843 or 1844, drove away from the said Santa Teresa Ranch the proceeds of the one hundred head of cattle allotted to the plaintiffs as the grandchildren of the deceased José Joaquin, to the Alviso Rancho, belonging to his father, Julio Valencia, and afterwards, in 1853, Cerildo took away from the Santa Teresa Ranch forty head given him by his grandmother, the widow Josepha.

16th. That the defendant Juan Bernal, in 1849, sold fifty head of said fondo cattle in the mines, of the average value of seventeen dollars and fifty cents per head, and the defendants, Augustin, Juan, and Bruno, each, occasionally, from 1837 to

1859 exchanged some of the fondo cattle for horses and sheep, but how many does not appear.

17th. That the natural increase of cattle is at the rate of one hundred per cent every three years.

*E. W. F. Sloan,* for Appellants.

A bill lies in such cases without the intervention of an administrator appointed by a Probate Court.

The Statute of Limitations does not bar the remedy sought by appellants, it being in the nature of a partition.

The rights of the heirs of José Joaquin Bernal, whatever they were, accrued to them under the Mexican law.

" In the Spanish code no distinction was made between the real and personal property of the succession. It descended in one mass to the heirs; was impressed with the like qualities, and was subjected to the same rules and dispositions." (10 Texas, 41, citing Escriche—*Heredero;* also, Law 13, Title 9, Part 7.)

" Partition is a division which men make among them of the things which they have in common by inheritance, or by any other cause." (Law 1, Title 15, Part 6.)

" Either of the heirs may require partition of the property." (Law 2, Title 15, Part 6.)

In the case of *Blair* v. *Cisneros,* 10 Texas, 34, the ancestor died in 1833, (Texas being then part of Mexican territory,) owing no debts, and the heirs did not renounce the succession. Afterwards, in 1849, the widow took out letters of administration, and as administratrix brought trespass to try title. It was held that the grant of administration was a nullity; that where an estate was accepted under the Mexican laws, without the benefit of inventory, no administration was necessary; and that where there is no administration, the heirs may sue and recover the property of the estate.

But, even under the English law, it has been held that an executor *de son tort* is liable, like other executors, to legatees and *distributees;* and that for the purpose of restraining waste,

or a sale of the property in his hands, a bill will lie at the suit of the distributee alone. (*Hansford* v. *Elliott*, 9 Leigh, 95.)

The remedy sought by appellants is not barred by the Statute of Limitations.

The statute does not run in favor of executors and administrators and against the distributees until final settlement or some equivalent proceeding. (*Webster* v. *Webster*, 10 Vesey, 93; *Decauche* v. *Sevetier*, 3 J. Ch. R. 215, 216.) Besides, any presumption arising from lapse of time is one of fact only, and may be overcome by circumstances. (*Arden's Executors* v. *Arden's Executors*, 1 J. Ch. R. 316, 317.)

Until there has been a full and final division of the estate amongst the co-heirs, they are considered in law as holding the property as tenants in common. Whilst they occupy that relation toward each other, there can be no prescription. (Vide an elaborate examination of the doctrine upon this point in *Gravier et al.* v. *Livingston*, 6 Marsh. 403, 404, 410, 411.)

*L. Archer*, for Respondents.

Neither of these defendants were ever administrator, executor, or guardian, or assumed to be, or acted as such.

If it were otherwise, the action would be barred by lapse of time, by presumption of settlement, by prescription. (See Story's Eq. Jur. Vol. 2, Sec. 1520, and notes; Vesey's Prac. Rep. Sumner's ed. Vol. 2, p. 11, and note; Cowen & Hill's Notes to Phil. on Evidence, Vol. 3, p. 504, note 301, and cases there cited; 7 Johns. Ch. Rep. 89–113; 12 Vesey on Ev. 269, note; *Dominguez* v. *Dominguez*, 7 Cal. 427; 5 Leigh, 164; 1 J. J. Marshall, 594.)

The above considerations and authorities apply, even if the case were one of express trust. But the Statute of Limitations would bar this action for the reason that the plaintiffs had an action at law, and the further reason that in any point of view the case cannot be regarded as one of express trust.

Upon the death of José Joaquin Bernal, the plaintiffs took

at once their share of the property by succession. (*De La Guerra* v. *Pachara*, 17 Cal. 187.)

By the Court, Sawyer, J.

The plaintiffs, as heirs of José Joaquin Bernal, who died in 1837, brought this action to recover their distributive share of the decedent's estate. The complaint alleges that defendants, upon the death of Bernal, took possession of the estate, and that they have ever since managed and controlled it, and that they refuse to account to plaintiffs for their distributive share.

The Court, upon a finding of the facts, entered judgment dismissing the complaint, from which judgment plaintiffs appeal.

The facts found by the Court do not sustain the allegations of the complaint. It is manifest from the findings that if any one acted in such a manner as to become liable in a character analogous to that of an executor *de son tort* at common law, it was the widow of Bernal, and not the defendants, who only acted during the first few years after the death of Bernal, under and for her ; after which they removed to their own ranchos, and the plaintiffs themselves took their places under the widow. The Court finds that from 1847 till the death of the widow in 1857—a period of ten years—the plaintiffs resided on the rancho of decedent with the widow ; and that the plaintiff Nicholas Valencia took charge of the stock on the rancho and managed it in connection with the widow's. It is not found that the possession and control of the property was changed subsequent to the death of the widow in 1857.

The facts found do not entitle plaintiffs to any relief upon the theory upon which the complaint is framed. The time when the plaintiffs attained their majority is not found, but it was evidently many years before the institution of this suit. If plaintiffs have any right of action not barred by the Statute of Limitations, it would seem from the facts disclosed in the finding that the remedy must be pursued upon the theory that the heirs and the widow were tenants in common of the estate

of Bernal; and in an action for a settlement and division of the property, all the heirs, including the representatives of the widow, would seem to be necessary parties.

No appeal is taken from the order denying a new trial, and no questions are made in the briefs that do not arise out of the judgment roll. We think the judgment should be affirmed, and it is so ordered.

Mr. Justice Rhodes expressed no opinion.